UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARVIN BODDIE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 3999 |
| ) | |
| NANCY McDANIEL, COOK COUNTY ) | Judge Joan H. Lefkow |
| OFFICERS ELECTORAL BOARD, and its ) | |
| members in their official capacities only, ) | |
| DAVID ORR, Chairman, RICHARD DEVINE ) | |
| and DOROTHY BROWN; and ILLINOIS ) | |
| STATE BOARD OF ELECTIONS and its ) | |
| members in their official capacities only, JOHN ) | |
| R. KEITH, Chairman, JESSE SMART, VICE ) | |
| Chairman, WILLIAM M. McGUFFAGE, ) | |
| DAVID E. MURRAY, ALBERT S. PORTER, ) | |
| WANDA L. REDNOUR, ELAINE ROUPAS, ) | |
| BRYAN A. SCHNEIDER, and DANIEL W. ) | |
| WHITE, Executive Director. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arvin Boddie ("Boddie") filed a six count complaint against defendants the Illinois State Board of Elections ("State Board"), John R. Keith, Jesse Smart, William M. McGuffage, David E. Murray, Albert S. Porter, Wanda L. Rednour, Elaine Roupas, Bryan A. Schneider, and Daniel W. White, in their official capacities (collectively, "State Board Members"), Nancy McDaniel ("McDaniel"), and the Cook County Officers Electoral Board ("County Board"), seeking to have three provisions of the Illinois Election Code (10 ILCS 5/ 10-8) declared unconstitutional. Presently before the court is McDaniel's and the County Board's

1

motion to dismiss Boddie's complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure ("FRCP").[1]  For the reasons stated below, defendants' motion to dismiss is granted.

## STANDARDS FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).  Dismissal is appropriate only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley* v. *Gibson*, 355 U.S. 41, 45-46 (1957); *Sanville* v. *McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001).  In ruling on a motion to dismiss, the court accepts as true all well-pleaded facts alleged in the complaint, and it draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page*, 291 F.3d 485, 486 (7th Cir. 2002).  Nevertheless, the court is not required to "ignore any facts set forth in the complaint that undermine the plaintiff's claim [nor does it] assign any weight to unsupported conclusions of law." *LeBlang Motors, Ltd.* v. *Subaru of Am., Inc.*, 148 F.3d 680, 690 (7th Cir. 1998) (internal citations and quotations omitted).

## ALLEGATIONS FROM THE COMPLAINT

Boddie is seeking to be a candidate in the November 7, 2006 election for the office of State Representative in the Illinois General Assembly, 28th Representative District, State of Illinois.  To that end, on June 26, 2006, Boddie filed nominating petitions with the State Board as a candidate of a new political party designated as the "Independent Democrats - Civil Rights

---

[1] The State Board and the State Board Members also moved to dismiss Boddie's complaint pursuant to Rule 12(b)(6), adopting McDaniel's and the County Board's memorandum of law in its entirety.

2

Party." On July 3, 2006, McDaniel filed, pursuant to § 10-8 of the Illinois Election Code (10 ILCS 5/ 10-8), an objector's petition alleging that Boddie's nominating petitions were invalid because they failed to contain a sufficient number of signatures of registered voters of the 28[th] Representative District to qualify for placement on the ballot.

On July 25, 2006, while McDaniel's petition was pending before the County Board, the election authority designated by 10 ILCS 5/ 10-9 to rule on objectors' petitions, Boddie filed this action in federal district court. In his complaint, Boddie challenges three provisions of 10 ILCS 5/ 10-4 that he says impose an unduly harsh burden on independent candidates seeking placement on the general election ballot. In Count I, Boddie argues that § 10-4's prohibition on the use of non-registered voters on the nominating petition violates First Amendment rights of speech and association. In Count II, Boddie challenges § 10-4's requirement that signers of the nominating petition reside in the candidate's district. In Count III and IV, Boddie challenges § 10-4's prohibition on dual circulation: "No person shall circulate or certify petitions for candidates of more than one political party, or for an independent candidate or candidates in addition to one political party, to be voted upon at the next primary or general election ..." In Count V, Boddie alleges pursuant to 42 U.S.C. § 1983 that the allegations contained in Counts I - IV constitute a deprivation of the rights, privileges and immunities guaranteed under the First and Fourteenth Amendments. Finally, in Count VI, Boddie seeks an award of attorney's fees.

## DISCUSSION

The impact of ballot access restrictions on voters implicates basic constitutional rights: ballot access restrictions impinge on the right of individuals to associate for political purposes, as well as the rights of qualified voters to cast their votes effectively. *Munro* v. *Socialist Workers*

*Party*, 479 U.S. 189, 193, 107 S. Ct. 533, 93 L. Ed. 2d 499 (1986). Both of these rights are of paramount importance. As such, not all ballot access restrictions will survive scrutiny under the First and Fourteenth Amendments. These rights, however, are not absolute and are necessarily subject to qualification if elections are to be run fairly and effectively. *Id.*

"Ballot access restrictions are evaluated under a flexible standard that weighs the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Lee v. Keith*, 2006 WL 2662166, at *4 (7th Cir. Sept. 18, 2006) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434, 112 S. Ct. 2059, 119 L. Ed. 2d 245 (1992) (internal quotations omitted). "Under this standard, the rigorousness of [the court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Id.* "Restrictions that 'severely' burden the exercise of constitutional rights must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id.* "But 'reasonable, nondiscriminatory restrictions' that impose less substantial burdens are generally justified by the state's 'important regulatory interest.'" *Id.*

The Illinois Election Code imposes three eligibility requirements on individuals who wish to sign a candidate's nominating petition: the petition signer must 1) be registered to vote (10 ILCS 4/10-4); 2) at the address they list on the nominating petition (10 ILCS 5/3-1.2); 3) which must be located in the appropriate electoral district (10 ILCS 5/10-2; 10-4). Defendants contend that the voter registration and residency requirements for petition signers serve two important

interests: 1) they ensure that only candidates who have demonstrated a sufficient modicum of support in the community appear on the ballot; and 2) they help prevent fraud in the election process by providing a method by which signatures can be verified to measure that support.

It is well-settled that states may condition access to the general election ballot upon a showing of a modicum of support among the potential voters for the office. *See Protect Marriage Ill.* v. *Orr*, 2006 WL 2548236, *3 (7th Cir. Sept. 6, 2006) ("A state is not required to list everyone who wants to stand for office, for then ballots would be the size of telephone books. It can impose reasonable restrictions on access, as by requiring, just as in this case, that the would-be candidate demonstrate significant support for his candidacy by submitting thousands (or, depending on the size of the electorate, tens or even hundreds of thousands) of petitions in order to prevent the voter confusions that would be engendered by too long a ballot."). *See also Munro*, 479 U.S. at 193 (citing *Jenness* v. *Fortson*, 403 U.S. 431, 442, 91 S. Ct. 1970, 29 L. Ed. 2d 554 (1971) ("[T]here surely is an important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot - the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election."); *Anderson* v. *Celebrezze*, 460 U.S. 780, 788-89, n. 9, 103 S. Ct. 1564, 1569-1570, n. 9, 75 L. Ed. 2d 547 (1983) (States have an "undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot....")); *Libertarian Party*, 108 F.3d 768, 774 ("[S]tates have a vital and compelling interest in requiring political parties appearing on the general ballot [to] demonstrate a significant, measurable quantum of community support.") (quoting *American Party of Texas* v. *White*, 415 U.S. 767, 782, 94 S. Ct. 1296, 39 L. Ed. 2d 744

(1974)).

In this case, Illinois's voter registration and residency requirements are a reasonable method by which to measure public support. While the ballot access restrictions reduce a candidate's pool of possible supporters, it eliminates only those supporters who are ineligible to vote in the election. As such, the ballot access restrictions merely require a candidate to demonstrate the required degree of support from those eligible to vote in the election. Thus, the end to be served by the ballot access restrictions perfectly fit the means selected to achieve it. Contrary to Boddie's contention, then, such restrictions substantially serve the state's interest in restricting access to the ballot to those candidates who have a verifiable quantum of community support.

Boddie's reliance on cases addressing statutory restrictions pertaining to petition circulators is unavailing. *See Tobin for Governor v. Illinois State Bd. of Elections*, 105 F.Supp. 882, 887 (N.D Ill. 2000) (holding that 10 ILCS 5/10-4's registration requirement for petition circulators violates the First and Fourteenth Amendments because petition circulation is core political speech which the registration requirement limits), *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 119 S. Ct. 636, 142 L. Ed. 2d 599 (1999) (holding that residency requirements for petition circulators violates First Amendment free speech guarantees because the restriction limited the number of persons available to circulate petitions and, accordingly, restricted core political speech), *Meyer v. Grant*, 486 U.S. 414, 108 S. Ct. 1886, 100 L. Ed. 2d 425 (1988) (holding that statutory prohibition against use of paid circulators violates First and Fourteenth Amendments), *Krislov v. Rednour*, 226 F.3d 851 (7th Cir. 2000) (holding that 10 ILCS 5/7-10's residency and registration requirements for petition circulators violates the First

Amendment rights of candidates to the extent that the requirements restrict the use of non-residents to speak on the politician's behalf in soliciting signatures for ballot access), and *Young v. Illinois State Bd. of Elections*, 116 F.Supp.2d 977 (N.D. Ill. 2000) (affirming that 10 ILCS 5/10-4's registration requirement is unconstitutional). The voter registration status and residence of a petition circulator is unrelated to any state interest. As a consequence, such restrictions can rightly be viewed as a device to exclude minor-party or independent candidates. The voter registration status and residence of petition signers, however, is directly related to the state's compelling interest in managing ballot access, which "must be tightly regulated for protection of the democratic process." *Protect Marriage Ill.*, 2006 WL 2548236, at *3.

In short, weighing the burdens on candidates and their supporters, along with the benefits of restricting access to the ballot, Illinois's eligibility requirements for nominating petition signers do not violate the Constitution. Accordingly, the court grants defendants' motion to dismiss counts I and II.

Boddie's claim that § 10-4's prohibition on dual circulation is unconstitutional is foreclosed by the Seventh Circuit's decision in *Citizens For John W. Moore Party v. Bd. of Election Comm'rs of the City of Chicago*, 794 F.2d 1254 (7th Cir. 1986). In that case, the Seventh Circuit found that § 10-4's dual circulation prohibition was constitutional because the state had a legitimate interest in protecting voter integrity and prohibition was a less restrictive alternative than the state could have adopted. *Id.* at 1261-63.

Boddie attempts to distinguish *Citizens for John W. Moore Party* by arguing that the challenged circulator in this case merely circulated a petition for a single candidate in a

7

Democratic primary for an unrelated office before circulating a petition on his behalf, whereas the challenged circulator in *Citizens for John W. Moore Party* circulated petitions for two different parties for the same office. The justifications for § 10-4, however, are equally applicable to both scenarios. In *Citizens for John W. Moore Party*, the Seventh Circuit observed that the dual circulation prohibition is logically related to two permissible purposes: 1) it promotes the cohesion of political parties; and 2) it reduces the potential for confusion if a circulator identified as the agent of one party suddenly solicits signatures for another party or an independent candidate. *Citizens for John W. Moore Party*, 794 F. 2d at 1260, 61. The challenged circulator in this case became an agent of the Democratic party when he circulated a petition on behalf of a Democratic party candidate, regardless of the office sought by that candidate. Thus, to permit the challenged circulator to now become identified by the public as an agent of Boddie's political party would undercut the compelling interests served by § 10-4. And since the First Amendment rights of circulators who circulate petitions for candidates of different offices and different parties are no greater than those who circulate petitions for candidates for the same office and different parties, there is no basis to find that § 10-4's prohibition as applied to those circulators is unconstitutional. Accordingly, the court grants defendants' motion to dismiss on counts III and IV.

Finally, Boddie's counts V and VI do not assert any independent claims against the defendants. Instead, Boddie re-alleges the First and Fourteenth Amendment violations contained in counts I through IV. Since the statutory provisions challenged in those counts are constitutional, the court grants defendants' motion to dismiss Boddie's counts V and VI.

8

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss [#14] is granted pursuant to Rule 12(b)(6), Fed. R. Civ. P.

ENTER: _____
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: September 26, 2006